**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

STEPHEN A. GALE-EBANKS
25791 S. Dixie Highway, Apt. 1131
Homestead, FL 33032

    Plaintiff,

vs.     Case No.: _____

CHESAPEAKE CREWING, LLC
130 Severn Avenue
Annapolis, Anne Arundel County, MD 21403

and

SCHUYLER LINE NAVIGATION
COMPANY, LLC
130 Severn Avenue
Annapolis, Anne Arundel County, MD 21403

    Defendants
_____/

**ACTION BY SEAMAN WITHOUT PREPAYMENT OF COSTS (28 US 1916)**
**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

    COMES NOW the Plaintiff STEPHEN A. GALE-EBANKS [hereinafter, "GALE"], by his undersigned attorneys, and sues the Defendants CHESAPEAKE CREWING, LLC. [hereinafter, "CHESAPEAKE"] and SCHUYLER LINE NAVIGIATION COMPANY, LLC. [hereinafter "SCHUYLER"] and states as follows:

**GENERAL ALLEGATIONS**

**a. Subject Matter Jurisdiction**

    1.    This is an action for personal injuries under the Jones Act, 46 U.S.C. §3104 and for maintenance and cure under general maritime law seeking damages in excess of $75,000.00

1

(Seventy-five Thousand Dollars), exclusive of costs, attorneys' fees and interest.

2. At all times material hereto, the Plaintiff Gale was and is a citizen of the United States and a citizen of the State of Florida.

3. At all times material hereto, the Defendants CHESAPEAKE and SCHUYLER were citizens of the State of Maryland, where they each also maintained their base of operations.

4. Accordingly, this court has diversity of citizenship jurisdiction over this case by virtue of 28 U.S.C. §1332(a)(1).

### b. Status of the Parties

5. At all times material hereto, the Plaintiff GALE was employed as a seaman aboard the *SLNC Goodwill*, which was owned and operated by the Defendant SCHUYLER.

6. At all times material hereto, the *SLNC Goodwill* was sailing in the western Pacific Ocean under a Time Charter between the Defendant SCHUYLER and The United States of America, which specifically provided that "[t]he Master, Officers and crew . . . shall all be deemed to be the servants and agents of the Owner. . . ." and that "[n]othing herein contained shall be construed as creating a demise of the Vessel to the Charterer, the Owner under this Charter retaining complete and exclusive possession and control of the vessel and her navigation."

7. Accordingly, the Plaintiff's claims asserted herein are not subject to either the Suits in Admiralty Act or the Public Vessels Act. *See Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir. 1989); *Alexander v. United States*, 63 F.3d 820 (9th Cir. 1995).

8. At all times material hereto, the Plaintiff was performing his duties as a seaman while the Defendant SCHUYLER's vessel was in operation on navigable waters off the coast of Japan.

7. On or about November 19, 2017, while in the service of the Defendant's vessel, the Plaintiff began to experience the onset of acute chest pain. Realizing that he was extremely ill, he

contacted the vessel's bridge and told the captain that he was in an emergency situation.

8.      The Captain, who was employed by the Defendants SCHUYLER and/or CHESAPEAKE, contacted the Defendants' port coordinator and medic and advised them of the Plaintiff's situation. Pursuant to their maintenance and cure obligations, the Defendants made the decision to treat the Plaintiff's medical condition by having him transferred off the ship by Japanese Coast Guard Helicopter to the Perfectual Oshima Hospital in Japan.

9.      A CAT scan was performed on Plaintiff, which revealed that he was suffering from a Stanford Type A dissection, which is a dissection of the ascending aorta as it leaves the heart, with brachiocephalic artery dissection. The Defendants SCHUYLER and/or CHESAPEAKE were notified and made the decision to transfer the Plaintiff to Yonemory Hospital, where he underwent further evaluation and eventually surgery on his aortic valve by Dr. Mamika Motokawa.

10.     While being treated in the Yonemory Hospital, the Plaintiff developed critical care neuropathy and DVTs in both legs requiring anticoagulation. Eventually, the Plaintiff was discharged from the hospital and returned to the United States via an airplane at the end of December 2017.

11.     Upon the Plaintiff's arrival, he was admitted to Mercy Hospital in Miami, Florida after suffering from shortness of breath and bilateral lower extremity edema, accompanied with pain and burning on the bottom of his feet due to the neuropathy which developed in the Yonemory Hospital. Eventually, the Plaintiff was required to undergo a thrombectomy on his lower leg DVT to relieve the pressure on January 2, 2020 at Mercy Hospital.

12.     Following his thrombectomy the Plaintiff was discharged with the cardiologist's recommendation that he continue treatment for his blood pressure as well as to remain on anti-coagulation therapy.  He was also told to look for any new onset of atrial fibrillation and heart flutter.

13. The Plaintiff continued on with his medical treatment in Miami, during which time he experienced another onset of shortness of breath and lethargy and was found to be mildly hypotensive with atrial fibrillation. As a result, an EPS study was performed, followed by a subsequent ablation on the Plaintiff to treat his atrial fibrillation. Imaging studies during the hospitalization revealed GALE's ejection fraction was reduced to 50% with mild aortic regurgitation and progressive systolic congestive heart failure.

14. Following the study and ablation, GALE continued to suffer from worsening shortness of breath and systolic congestive heart failure. The Plaintiff underwent further testing, which demonstrated problems with his heart as a result of his surgery in Japan.

15. Shortly thereafter another surgery was recommended for the Plaintiff in order to replace his aortic valve and to repair damage to his heart. As a result, the Plaintiff was required to undergo an entire new open-heart surgery at the Aventura Hospital in Florida in May, 2018, during which his aortic valve was replaced with a bioprosthetic aortic valve.

16. Following this surgery, the Plaintiff has continued to suffer from atrial fibrillation, lower extremity pain and weakness, a "small nerve fiber injury," bilateral neuropathy to his lower extremities and other attendant injuries and conditions.

17. As a result of his residual problems the Plaintiff is not at maximum medical cure and continues to require ongoing medical care, treatment and monitoring. As a further result, the Plaintiff is totally disabled, is unable to return to work and suffers from depression.

### C. The Jones Act

19. The Jones Act, 46 U.S.C. §30104 f/k/a 46 App. U.S.C.A. §688 provides:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring <u>a civil action at law, with the right of trial by jury</u>, against the employer. <u>Laws of the United States regulating</u> recovery for personal injury to, or death of, <u>a railway employee apply to an action under this section</u>. (emphasis added)

20. The Federal Employers Liability Act, 45 U.S.C. §51, which is incorporated by reference into the Jones Act protections provided to seamen, provides in pertinent part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

21. The Federal Employers Liability Act, 45 U.S.C. §55, which is incorporated by reference into the Jones Act protections provided to seamen, provides in pertinent part:

> <u>Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void</u>: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought. (emphasis added)

22. Under the Jones Act, a seaman's employer has a non-delegable duty to provide prompt, proper and adequate cure to its seamen who are taken ill or injured in the service of their vessels. Accordingly, the Defendants CHESAPEAKE and/or SCHUYLER are vicariously liable for the negligence of the physicians, hospitals and other health care providers they utilized to fulfill their cure obligations in treating the Plaintiff for his original cardiac condition, which included:

## COUNT I

## JONES ACT CLAIM AGAINST CHESAPEAKE FOR NEGLIGENT FAILURE TO PROVIDE PROPER, PROMPT AND ADEQUATE MEDICAL TREATMENT

22. The Plaintiff readopts and re-alleges the allegations contained in paragraphs one (1) through twenty-two (22) above and further avers:

23. At all times material hereto, the Plaintiff was employed by the Defendant CHESAPEAKE while serving aboard the *SLNC GOODWILL* as a seaman under the Jones Act and U.S. general maritime law and accordingly, the Defendant CHESAPEAKE was his Jones Act

5

employer.

24. In the alternative, the Defendant CHESAPEAKE was the Plaintiff's Jones Act employer by virtue of his status as a borrowed servant in that said Defendant controlled all aspects of the Plaintiff's work, including but not limited to: making the determination to hire him, training the Plaintiff for his work tasks, assigning him to his position aboard the vessel, designing his job, determining his specific daily work duties, supervising, directing and monitoring his performance of his work tasks on a daily basis, establishing rules and regulations for the performance of his work duties, evaluating his performance of his work tasks for the purposes of maintaining his employment aboard the vessel, setting his hours of work, maintaining the right to fire and/or discipline him and controlling his ability to obtain medical attention both aboard the vessel or shoreside when necessary to treat injuries or illness occurring during his service to the vessel.

25. As a result of the Plaintiff's status as a seaman and the Defendant's relationship to him as his employer, the Defendant CHESAPEAKE owed the Plaintiff the non-delegable duty to provide him with proper, prompt and adequate medical care for any illness and/or injuries he suffered or that manifested while in service to his vessel.

26. The Defendant breached its duty to provide the Plaintiff with prompt, proper and adequate medical care and treatment in the following manner:

(a) Failing to have Plaintiff promptly seen for his medical conditions;

(b) Failing to properly and promptly diagnose and assess Plaintiff's medical conditions including on the Defendant's vessel when Plaintiff first became ill and failing to timely diagnose and failing to timely treat Plaintiff's critical care neuropathy;

(c) Failing to perform and/or order necessary scans, tests and examinations to determine the extent and nature of Plaintiff's medical conditions;

(d) Failing to promptly provide Plaintiff with reasonable and necessary medical care, including shore side care in Japan and the referral to appropriate specialists, which led to Plaintiff developing a lower extremity DVT, a critical care neuropathy which is now permanent and requiring the Plaintiff to undergo a second cardiac surgery that should not have been necessary;

(e)  Failing to provide Plaintiff with the proper follow-up medical care and medical treatment, including but not limited to appropriate follow-up appointments, medications, diagnostic testing, therapy, surgeries and monitoring including failing to monitor the Plaintiff after his initial release from the hospital, this would also include failing to monitor him while he was at the Defendant's chosen facility in Japan in November of 2017;

(f)  Forcing Plaintiff to procure his own medical care and further failing to compensate Plaintiff for same; and/or

(g)  Other acts of negligence to be determined as discovery in this matter progresses.

27.  The Defendant is also vicariously liable for the negligence of the physicians and health care providers it utilized to fulfill its maintenance and cure obligations in treating the Plaintiff for his original cardiac condition, which included:

(a)  Selecting an improper and/or inadequate type of surgical procedure at the Yonemory Hospital in Japan for the Plaintiff's cardiac condition;

(b)  Performing the procedure selected in Japan in an improper or substandard fashion, resulting in unnecessary complications and resulting injuries;

(c)  Failing to properly treat the Plaintiff during his hospitalization at the Yonemory Hospital in order to prevent or reduce the risk of developing DVTs:

(d)  In other manners to be determined as discovery in this matter progresses.

28.  As a direct and proximate result of the Defendant's above described negligence and the negligence for which it is vicariously liable, the Plaintiff's initial medical condition was not properly treated and resolved, but was instead significantly worsened and aggravated. As a further result, the Plaintiff was required to undergo additional treatment in the United States, including a second cardiac surgery which would have been unnecessary if he had been properly treated in Japan, which in turn aggravated his cardiac and neurological conditions.

29.  This in turn proximately caused the Plaintiff to be injured in and about his body and extremities, to suffer new and unnecessary medical complications, to undergo additional surgeries and treatment which should have been unnecessary, to develop resulting disabilities and to sustain

pain and suffering, emotional distress, severe depression, mental anguish, significant scarring, additional medical complications, disability, physical handicap, loss of ability to enjoy and lead a normal life, significant aggravation of his pre-existing conditions, and additional cardiac injury. These injuries and disabilities are permanent in nature and accordingly, the Plaintiff will continue to suffer from them throughout the remainder of his life.

30. As a further proximate result thereof, the Plaintiff was required to undergo in the past and will continue to need in the future medical, hospital, nursing, assistive and rehabilitative care and has incurred and will continue to incur medical, hospital, nursing, assistive, rehabilitative and other related expenses in the care and treatment of his injuries and conditions.

31. As a further proximate cause thereof, the Plaintiff has incurred lost wages in the past and the loss of future earning capacity as his ability to work has been significantly impaired.

WHEREFORE, the Plaintiff demands judgment against Defendant CHESAPEAKE CREWING, for all damages allowed by law, with costs, and pre and post judgment interest, as allowed by law, should any judgment be entered and all other relief which is appropriate. Plaintiff further demands a trial by jury on all issues so triable.

## COUNT II

### JONES ACT CLAIM AGAINST SCHUYLER FOR NEGLIGENT FAILURE TO PROVIDE PROPER, PROMPT AND ADEQUATE MEDICAL TREATMENT

32. The Plaintiff readopts and re-alleges the allegations contained in paragraphs one (1) through twenty-two (22) above and further avers:

33. At all times material hereto, the Plaintiff was employed by the Defendant SCHUYLER while serving aboard the *SLNC GOODWILL* as a seaman under the Jones Act and U.S. general maritime law and accordingly, the Defendant SCHUYLER was his Jones Act employer.

34. In the alternative, the Defendant SCHUYLER was the Plaintiff's Jones Act

Case 1:20-cv-03121-JKB   Document 1   Filed 10/27/20   Page 9 of 19
*Stephen A. Gale-Ebanks v. Chesapeake Crewing, LLC.*

employer by virtue of his status as a borrowed servant in that said Defendant controlled all aspects of the Plaintiff's work, including but not limited to: making the determination to hire him, training the Plaintiff for his work tasks, assigning him to his position aboard the vessel, designing his job, determining his specific daily work duties, supervising, directing and monitoring his performance of his work tasks on a daily basis, establishing rules and regulations for the performance of his work duties, evaluating his performance of his work tasks for the purposes of maintaining his employment aboard the vessel, setting his hours of work, maintaining the right to fire and/or discipline him and controlling his ability to obtain medical attention both aboard the vessel or shoreside when necessary to treat injuries or illness occurring during his service to the vessel.

35. As a result of the Plaintiff's status as a seaman and the Defendant's relationship to him as his employer, the Defendant SCHUYLER owed the Plaintiff the non-delegable duty to provide him with proper, prompt and adequate medical care for any illness and/or injuries he suffered or that manifested while in service to his vessel.

36. That at all times material hereto, the Defendant CHESAPEAKE was acting as the agent for the Defendant SCHUYLER and accordingly, the Defendant SCHUYLER is vicariously liable for the acts of negligence of the Defendant CHESAPEAKE.

37. The Defendant SCHUYLER, either through its own acts and/or omissions, or those of its agent CHESAPEAKE, breached its duty to provide the Plaintiff with prompt, proper and adequate medical care and treatment in the following manner:

(a) Failing to have Plaintiff promptly seen for his medical conditions;

(b) Failing to properly and promptly diagnose and assess Plaintiff's medical conditions including on the Defendant's vessel when Plaintiff first became ill and failing to timely diagnose and failing to timely treat Plaintiff's critical care neuropathy;

(c) Failing to perform and/or order necessary scans, tests and examinations to determine the extent and nature of Plaintiff's medical conditions;

(d) Failing to promptly provide Plaintiff with reasonable and necessary medical care

    including shore side care in Japan and the referral to appropriate specialists which led to Plaintiff developing a lower extremity DVT, a critical care neuropathy which is now permanent and requiring the Plaintiff to undergo a second cardiac surgery that should not have been necessary;

 (e) Failing to provide Plaintiff with the proper follow-up medical care and medical treatment, including but not limited to appropriate follow-up appointments, medications, diagnostic testing, therapy, surgeries and monitoring including failing to monitor the Plaintiff after his initial release from the hospital, this would also include failing to monitor him while he was at the Defendant's chosen facility in Japan in November of 2017;

 (f) Forcing Plaintiff to procure his own medical care and further failing to compensate Plaintiff for same; and/or

 (g) Other acts of negligence to be determined as discovery in this matter progresses.

38. The Defendant is also vicariously liable for the negligence of the physicians and health care providers that it or its agent CHESAPEAKE utilized to fulfill its cure obligations in treating the Plaintiff for his original cardiac condition, which included:

 (a) Selecting an improper and/or inadequate type of surgical procedure at the Yonemory Hospital in Japan for the Plaintiff's cardiac condition;

 (b) Performing the procedure selected in Japan in an improper or substandard fashion, resulting in unnecessary complications and resulting injuries;

 (c) Failing to properly treat the Plaintiff during his hospitalization at the Yonemory Hospital in order to prevent or reduce the risk of developing DVTs;

 (d) In other manners to be determined as discovery in this matter progresses.

39. As a direct and proximate result of the Defendant's above described negligence and the negligence for which it is vicariously liable, the Plaintiff's initial medical condition was not properly treated and resolved, but was instead significantly worsened and aggravated. As a further result, the Plaintiff was required to undergo additional treatment in the United States, including a second cardiac surgery, which would have been unnecessary if he had been properly treated in Japan, which in turn aggravated his cardiac and neurological conditions.

40. This in turn proximately caused the Plaintiff to be injured in and about his body and

extremities, to suffer new and unnecessary medical complications, to undergo additional surgeries and treatment which should have been unnecessary, to develop resulting disabilities and to sustain pain and suffering, emotional distress, severe depression, mental anguish, significant scarring, additional medical complications, disability, physical handicap, loss of ability to enjoy and lead a normal life, significant aggravation of his pre-existing conditions, and additional cardiac injury. These injuries and disabilities are permanent in nature and accordingly, the Plaintiff will continue to suffer from them throughout the remainder of his life.

41.     As a further proximate result thereof, the Plaintiff was required to undergo in the past and will continue to need in the future medical, hospital, nursing, assistive and rehabilitative care and has incurred and will continue to incur medical, hospital, nursing, assistive, rehabilitative and other related expenses in the care and treatment of his injuries and conditions.

42.     As a further proximate cause thereof, the Plaintiff has incurred lost wages in the past and the loss of future earning capacity as his ability to work has been significantly impaired.

**WHEREFORE**, the Plaintiff demands judgment against Defendant SCHUYLER for all damages allowed by law, with costs, and pre and post judgment interest, as allowed by law, should any judgment be entered and all other relief which is appropriate. Plaintiff further demands a trial by jury on all issues so triable.

## COUNT III

### CHESAPEAKE'S FAILURE TO PROVIDE PROPER, PROMPT AND ADEQUATE MAINTENANCE AND CURE UNDER GENERAL MARITIME LAW

43.     The Plaintiff readopts and re-alleges the allegations contained in paragraphs one (1) through twenty-two (22) above and further avers:

44.     As a result of the Plaintiff's status as a seaman and the Defendant's relationship as either his contractual or borrowing employer, the Defendant CHESAPEAKE owed the Plaintiff the non-delegable duty under general maritime law to provide him with prompt, adequate and

11

proper maintenance and cure for any illness and/or injury which he suffered while in the service to her vessel.

45. As a result of its non-delegable duty under general maritime law to provide the Plaintiff with prompt, adequate and proper maintenance and cure, the Defendant is vicariously liable for the negligence of all of the doctors, nurses, hospitals and health care providers it utilized to fulfill this non-delegable duty both aboard the vessel and shoreside.

46. The Defendant breached its duty to provide the Plaintiff with prompt, proper and adequate medical care and treatment in the following manner:

(a) Failing to have Plaintiff promptly seen for his medical conditions;

(b) Failing to properly and promptly diagnose and assess Plaintiff's medical conditions including on the Defendant's vessel when Plaintiff first became ill and failing to timely diagnose and failing to timely treat Plaintiff's critical care neuropathy;

(c) Failing to perform and/or order necessary scans, tests and examinations to determine the extent and nature of Plaintiff's medical conditions;

(d) Failing to promptly provide Plaintiff with reasonable and necessary medical care including shore side care in Japan and the referral to appropriate specialists which led to Plaintiff developing a lower extremity DVT, a critical care neuropathy which is now permanent and requiring the Plaintiff to undergo a second cardiac surgery that should not have been necessary;

(e) Failing to provide Plaintiff with the proper follow-up medical care and medical treatment, including but not limited to appropriate follow-up appointments, medications, diagnostic testing, therapy, surgeries and monitoring including failing to monitor the Plaintiff after his initial release from the hospital, this would also include failing to monitor him while he was at the Defendant's chosen facility in Japan in November of 2017;

(f) Forcing Plaintiff to procure his own medical care and further failing to compensate Plaintiff for same; and/or

(g) Other acts of negligence to be determined as discovery in this matter progresses.

47. The Defendant is also vicariously liable for the acts and omissions of the physicians and health care providers it utilized to fulfill its non-delegable maintenance and cure obligations in treating the Plaintiff for his original cardiac condition, which included:

    (a)    Selecting an improper and/or inadequate type of surgical procedure at the Yonemory Hospital in Japan for the Plaintiff's cardiac condition;

    (b)    Performing the procedure selected in Japan in an improper or substandard fashion, resulting in unnecessary complications and resulting injuries;

    (c)    Failing to properly treat the Plaintiff during his hospitalization at the Yonemory Hospital in order to prevent or reduce the risk of developing DVTs;

    (d)    In other manners to be determined as discovery in this matter progresses.

48.    As a direct and proximate result of the Defendant's breach of its non-delegable duty to provide the Plaintiff with prompt, adequate and proper maintenance and cure as described above either by virtue of its own actions or those for which it is vicariously liable, the Plaintiff's initial medical condition was not properly treated and resolved, but was instead significantly worsened and aggravated. As a further result, the Plaintiff was required to undergo additional treatment in the United States, including a second cardiac surgery, which would have been unnecessary if he had been properly treated in Japan, which in turn aggravated his cardiac and neurological conditions.

49.    This in turn proximately caused the Plaintiff to be injured in and about his body and extremities, to suffer new and unnecessary medical complications, to undergo additional surgeries and treatment which should have been unnecessary, to develop resulting disabilities and to sustain pain and suffering, emotional distress, severe depression, mental anguish, significant scarring, additional medical complications, disability, physical handicap, loss of ability to enjoy and lead a normal life, significant aggravation of his pre-existing conditions, and additional cardiac injury. These injuries and disabilities are permanent in nature and accordingly, the Plaintiff will continue to suffer from them throughout the remainder of his life.

50.    As a further proximate result thereof, the Plaintiff was required to undergo in the past and will continue to need in the future medical, hospital, nursing, assistive and rehabilitative

care and has incurred and will continue to incur medical, hospital, nursing, assistive, rehabilitative and other related expenses in the care and treatment of his injuries and conditions.

51. As a further proximate cause thereof, the Plaintiff has incurred lost wages in the past and the loss of future earning capacity as his ability to work has been significantly impaired.

52. The Defendant acted in a willful, arbitrary and/or callous manner by ignoring the Plaintiff's need for medical treatment and maintenance and by refusing to pay all of Plaintiff's unearned wages until Plaintiff was forced to hire counsel to pursue said wages and all of his maintenance and cure rights.

53. As a result of the Defendant's breach of its' obligations to provide maintenance and cure to the Plaintiff, GALE's underlying condition was significantly aggravated and he has never reached maximum medical improvement.

54. As a direct and proximate result of the Defendant's persistent failure to provide maintenance and proper cure, Plaintiff was injured in and about his body and extremities, and suffered, including but not limited to the following, pain therefrom both past and future, suffered mental and emotional distress, mental anguish, suffered significant scarring, suffered aggravation of pre-existing conditions or injury, incurred medical expenses in the care and treatment of his injuries both past and future, suffered physical handicap, disability, expenses, attorney's fees, sustained the loss of ability to enjoy and lead a normal life, lost wages, the loss of future earning capacity, tips, and fringe benefits and his ability to work has been impaired. In addition, the Plaintiff incurred out of pocket expenses as a result of the Defendant's actions. Plaintiff's injuries are permanent and continuing in nature, and Plaintiff will suffer losses and impairments in the future and will require ongoing medical treatment and care for the remainder of his life.

55. Because of the Defendant's refusal to provide the Plaintiff with his full prompt, adequate and proper maintenance and cure, the Plaintiff was forced to hire counsel to pursue his

remedies and as a result the Defendant is obligated to pay the Plaintiff's attorney's fees and costs.

WHEREFORE, the Plaintiff demands judgment and the provision of all of Plaintiff's past maintenance and cure, together with pre and post judgment interest, costs, and attorney's fees, and for all other damages allowed by law, including but not limited to any and all compensatory and consequential damages, as described above, for the aggravation of Plaintiff's medical conditions as a result of the failure to provide Plaintiff with prompt, adequate and proper maintenance and cure, as well as punitive damages, against the Defendant, CHESAPEAKE CREWING, and any other relief this Court deems appropriate under the circumstances. The Plaintiff further demands a trial by jury on all issues so triable.

## COUNT IV

### SCHUYLER'S FAILURE TO PROVIDE PROPER, PROMPT AND ADEQUATE MAINTENANCE AND CURE UNDER GENERAL MARITIME LAW

56. The Plaintiff readopts and re-alleges the allegations contained in paragraphs one (1) through twenty-two (22) above and further avers:

57. As a result of the Plaintiff's status as a seaman and the Defendant's relationship as either his contractual or borrowing employer, the Defendant SCHUYLER owed the Plaintiff the non-delegable duty under general maritime law to provide him with prompt, adequate and proper maintenance and cure for any illness and/or injury which he suffered while in the service to her vessel.

58. As a result of its non-delegable duty under general maritime law to provide the Plaintiff with prompt, adequate and proper maintenance and cure, the Defendant is vicariously liable for the negligence of all of the doctors, nurses, hospitals and health care providers it utilized to fulfill this non-delegable duty both aboard the vessel and shoreside.

59. That at all times material hereto, the Defendant CHESAPEAKE was acting as the agent for the Defendant SCHUYLER and accordingly, the Defendant SCHUYLER is vicariously

15

liable for the acts or omissions of the Defendant CHESAPEAKE.

60. The Defendant, either through its own acts or those of its agents, breached its duty to provide the Plaintiff with prompt, proper and adequate medical care and treatment in the following manner:

   (a) Failing to have Plaintiff promptly seen for his medical conditions;

   (b) Failing to properly and promptly diagnose and assess Plaintiff's medical conditions including on the Defendant's vessel when Plaintiff first became ill and failing to timely diagnose and failing to timely treat Plaintiff's critical care neuropathy;

   (c) Failing to perform and/or order necessary scans, tests and examinations to determine the extent and nature of Plaintiff's medical conditions;

   (d) Failing to promptly provide Plaintiff with reasonable and necessary medical care including shore side care in Japan and the referral to appropriate specialists which led to Plaintiff developing a lower extremity DVT, a critical care neuropathy which is now permanent and requiring the Plaintiff undergo a second cardiac surgery that should not have been necessary;

   (e) Failing to provide Plaintiff with the proper follow-up medical care and medical treatment, including but not limited to appropriate follow-up appointments, medications, diagnostic testing, therapy, surgeries and monitoring including failing to monitor the Plaintiff after his initial release from the hospital, this would also include failing to monitor him while he was at the Defendant's chosen facility in Japan in November of 2017;

   (f) Forcing Plaintiff to procure his own medical care and further failing to compensate Plaintiff for same; and/or

   (g) Other acts of negligence to be determined as discovery in this matter progresses.

61. The Defendant is also vicariously liable for the acts and omissions of the physicians and health care providers it utilized to fulfill its non-delegable maintenance and cure obligations in treating the Plaintiff for his original cardiac condition, which included:

   (a) Selecting an improper and/or inadequate type of surgical procedure at the Yonemory Hospital in Japan for the Plaintiff's cardiac condition;

   (b) Performing the procedure selected in Japan in an improper or substandard fashion, resulting in unnecessary complications and resulting injuries;

   (c) Failing to properly treat the Plaintiff during his hospitalization at the Yonemory Hospital in order to prevent or reduce the risk of developing DVTs;

  (d) In other manners to be determined as discovery in this matter progresses.

  62. As a direct and proximate result of the Defendant's breach of its non-delegable duty to provide the Plaintiff with prompt, adequate and proper maintenance and cure as described above either by virtue of its own actions or those for which it is vicariously liable, the Plaintiff's initial medical condition was not properly treated and resolved, but was instead significantly worsened and aggravated. As a further result, the Plaintiff was required to undergo additional treatment in the United States, including a second cardiac surgery which would have been unnecessary if he had been properly treated in Japan, which in turn aggravated his cardiac and neurological conditions.

  63. This in turn proximately caused the Plaintiff to be injured in and about his body and extremities, to suffer new and unnecessary medical complications, to undergo additional surgeries and treatment which should have been unnecessary, to develop resulting disabilities and to sustain pain and suffering, emotional distress, severe depression, mental anguish, significant scarring, additional medical complications, disability, physical handicap, loss of ability to enjoy and lead a normal life, significant aggravation of his pre-existing conditions, and additional cardiac injury. These injuries and disabilities are permanent in nature and accordingly, the Plaintiff will continue to suffer from them throughout the remainder of his life.

  64. As a further proximate result thereof, the Plaintiff was required to undergo in the past and will continue to need in the future medical, hospital, nursing, assistive and rehabilitative care and has incurred and will continue to incur medical, hospital, nursing, assistive, rehabilitative and other related expenses in the care and treatment of his injuries and conditions.

  65. As a further proximate cause thereof, the Plaintiff has incurred lost wages in the past and the loss of future earning capacity as his ability to work has been significantly impaired.

  66. The Defendant acted in a willful, arbitrary and/or callous manner by ignoring the

17

Plaintiff's need for medical treatment and maintenance and by refusing to pay all of Plaintiff's unearned wages until Plaintiff was forced to hire counsel to pursue said wages and all of his maintenance and cure rights.

67.     As a result of the Defendant's breach of its obligations to provide maintenance and cure to the Plaintiff, GALE's underlying condition was significantly aggravated and he has never reached maximum medical improvement.

68.     As a direct and proximate result of the Defendant's persistent failure to provide maintenance and proper cure, Plaintiff was injured in and about his body and extremities, and suffered, including but not limited to the following, pain therefrom both past and future, suffered mental and emotional distress, mental anguish, suffered significant scarring, suffered aggravation of pre-existing conditions or injury, incurred medical expenses in the care and treatment of his injuries both past and future, suffered physical handicap, disability, expenses, attorney's fees, sustained the loss of ability to enjoy and lead a normal life, lost wages, the loss of future earning capacity, tips, and fringe benefits and his ability to work has been impaired. In addition, the Plaintiff incurred out of pocket expenses as a result of the Defendant's actions. Plaintiff's injuries are permanent and continuing in nature, and Plaintiff will suffer losses and impairments in the future and will require ongoing medical treatment and care for the remainder of his life.

69.     Because of the Defendant's refusal to provide the Plaintiff with his full prompt, adequate and proper maintenance and cure, the Plaintiff was forced to hire counsel to pursue his remedies and as a result the Defendant is obligated to pay the Plaintiff's attorney's fees and costs.

WHEREFORE, the Plaintiff demands judgment and the provision of all of Plaintiff's past maintenance and cure, together with pre and post judgment interest, costs, and attorney's fees, and for all other damages allowed by law, including but not limited to any and all compensatory and consequential damages, as described above, for the aggravation of Plaintiff's medical conditions

as a result of the failure to provide Plaintiff with prompt, adequate and proper maintenance and cure, as well as punitive damages, against the Defendant, SCHUYLER and any other relief this Court deems appropriate under the circumstances. The Plaintiff further demands a trial by jury on all issues so triable.

DATED THIS 27nd day of October, 2020.

Respectfully submitted,

_____/S/_____
Robert M. Schwartzman, Esq.
CPF# 8011010339
Schwartzman Law, LLC
2313 Hidden Glen Drive
Owings Mills, MD 21117
Phone: 410-852-7367
rms@rs-atty.com
        and
Robert D. Peltz, Esq.
The Peltz Law Firm, P.A.
P.O. Box 56-0003
Miami, Fla. 33256
Phone: 786-732-7219
RPeltzLaw@Gmail.com
        and
Louis A. Vucci, PA
1 SE 3rd Avenue, Suite 3020
Miami, Florida 33131
Tel: (305) 573-0125
Fax: (786) 536-7799
vuccilawgroup@gmail.com

Attorneys for the Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

_____/s/_____
Robert M. Schwartzman

19