## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STEPHEN A. GALE-EBANKS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| | * | **CIVIL NO. JKB-20-3121** |
| **CHESAPEAKE CREWING, LLC,** *et al.*, | * | |
| **Defendants.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM

Plaintiff Stephen A. Gale-Ebanks, a seaman who was formerly employed by Chesapeake

Crewing, LLC and Schuyler Line Navigation Company, LLC (collectively "Defendants"), brought

maritime claims against Defendants, alleging they are vicariously liable for negligent medical

treatment that Plaintiff received after experiencing an emergency cardiac event on Defendants'

vessel. (Compl., ECF No. 1.) Defendants seek dismissal, or alternatively summary judgment,

arguing that Plaintiff's claims can only be brought against the United States government, which

was chartering Defendants' ship during the incident at issue. (Mot. Dismiss, ECF No. 15.)

Defendants' motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md.

2018). For the reasons set forth below, Defendants' Motion to Dismiss is denied.

### I. *Background[1]*

In November 2017, Plaintiff was working in the western Pacific Ocean on the *SLNC*

*Goodwill*, a vessel owned by Defendants and chartered by the United States. (Compl. ¶¶ 5–7.) On

or about November 19, 2017, Plaintiff suddenly experienced "acute chest pain" and "told the

---

[1] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[vessel's] captain that he was in an emergency situation." (*Id.* ¶ 7.) The Captain, an employee of Defendants, consulted with Defendants' port coordinator and medic and summoned a Japanese Coast Guard Helicopter to take Plaintiff to the Prefectural Oshima Hospital in Japan. (*Id.* ¶ 8.)

At that hospital, Plaintiff was diagnosed with an aortal problem called a "Stanford Type A dissection" and transferred to Yonemory Hospital, also in Japan, for surgery on his aortic valve. (*Id.* ¶ 9.) Plaintiff alleges Defendants made the decision to transfer him to the second hospital, after being informed of his diagnosis. (*Id.*) Unfortunately, Plaintiff experienced complications following his surgery, including neuropathy and deep vein thrombosis. (*Id.* ¶ 10.) Upon his return to Florida in late December 2017, Plaintiff was admitted to Mercy Hospital in Miami to receive treatment for these complications. (*Id.* ¶ 10–11.)

In the ensuing months, Plaintiff suffered more symptoms, including "worsening shortness of breath and systolic congestive heart failure," which were allegedly attributed to the surgery he underwent in Japan. (*Id.* ¶ 14.) Plaintiff had open-heart surgery in Miami in May 2018 "to replace his aortic valve and to repair damage to his heart." (*Id.* ¶ 15.) After this surgery, Plaintiff alleges that he still experiences "atrial fibrillation, lower extremity pain and weakness, a 'small nerve fiber injury,' bilateral neuropathy to his lower extremities and other attendant injuries and conditions," as of a result of which he is "totally disabled" and "unable to return to work." (*Id.* ¶¶ 16–17.)

Part (IV)(s) of the parties' Military Sealift Command Tanker Time Charter agreement (the "Charter") provides, "Nothing herein contained shall be construed as creating a demise of the Vessel to the Charterer, the Owner under this Charter retaining complete and exclusive possession and control of the Vessel and her navigation."[2] (Mot. Dismiss Ex. A at IV-19, ECF No. 15-2.) Other relevant Charter provisions governing Defendants' relationship with the United States are:

---

[2] The Fourth Circuit permits judicial notice of documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). None of the

"The Master, Officers, and crew shall be appointed or hired by the Owner and shall be deemed to be the servants and agents of the Owner at all times except as otherwise specified in this Charter. The Master of the Vessel shall be under the Charterer's direction with regard to the employment of the Vessel, but shall not be under the Charterer's orders with regard to the navigation, care, and custody of the Vessel . . . The Vessel and all Associated Equipment shall be, insofar as due diligence can make them so, seaworthy, properly and efficiently manned and trained, equipped, supplied, and in every way suitable and adequately fitted for and in all respects ready for the service contemplated under this Charter Party . . . The Owner shall exercise due diligence to maintain the Vessel and Associated Equipment in such state during the period of this Charter Party."

(*Id.* at III-2, IV-9.)

Plaintiff brings claims alleging negligence and vicarious liability under the Jones Act, 46 U.S.C. § 30104, and general maritime law. He argues that, under the Jones Act, Defendants had a "non-delegable duty to provide [Plaintiff] with proper, prompt and adequate medical care for any illness and/or injuries he suffered or that manifested while in service to his vessel," and breached that duty when Defendants, as well as the doctors who treated Plaintiff in Japan, did not provide Plaintiff with reasonable medical care. (Compl. ¶¶ 25–27, 35–38.) Plaintiff makes nearly identical allegations in support of his claims under general maritime law. (*See* Compl. ¶¶ 45–47, 58–61.)

## II.   *Legal Standard*

"In considering a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

parties dispute the authenticity of this document, which is relevant to Plaintiff's claims, and accordingly, the Court will consider the Charter in addressing Defendants' Motion to Dismiss.

the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

In addition to moving to dismiss, Defendants move in the alternative for summary judgment. (*see* ECF No. 15.) "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), which provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d) (emphasis added). "Nevertheless, a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . or to reject it or simply not consider it.'" *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004)).

For a court to convert a motion to dismiss into one for summary judgment, the Fourth Circuit requires that "the parties first be afforded a reasonable opportunity for discovery." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (internal citations and quotations omitted). Accordingly, the Court finds that Plaintiff "should not be denied the opportunity to use the discovery provisions of the Federal Rules of Civil Procedure to supplement the record before adjudication of the merits of the case." *Plummer v. Wright*, Civ. No. TDC-16-2957, 2017 WL 4417829, at *4 (D. Md. Oct. 3, 2017). As a result, the Court does not reach Defendants' motion in the alternative for summary judgment. (ECF No. 15.) Accordingly, the Court will decline to exercise its discretion under Rule 12(d) and will instead evaluate Defendants' motion pursuant to Rule 12(b)(6).

4

### III.   Analysis

Defendants argue that the Complaint should be dismissed because the United States is the appropriate—and exclusive—defendant against whom Plaintiff may assert his claims.   Both parties, however, cite precedents whose reasoning contradicts Defendants' arguments.

#### A.   The Suits in Admiralty Act's Exclusivity Clause

In their motion to dismiss, Defendants contend that Plaintiff failed to state a claim for the purposes of Rule 12(b)(6) because the Suits in Admiralty Act ("SAA") requires Plaintiff to bring his suit against the United States, instead of Defendants.   (Mot. Dismiss Mem. Supp. at 14, ECF No. 15-1.)

The SAA does not itself provide a remedy, but "merely acts to waive the United States' immunity so as to furnish a 'jurisdictional hook on which to hang a traditional admiralty claim.'" *Williams v. Cent. Gulf Lines*, 874 F.2d 1058, 1061 (5th Cir. 1989) (quoting *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir. 1982)).   The SAA contains an exclusivity provision that prevents claimants from bringing suit against any defendants other than the federal government. That provision reads, "[i]f a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim." 46 U.S.C. § 30904.

In *Williams v. Central Gulf Lines*, the Fifth Circuit delineated a two-part test for determining whether the SAA will apply in cases where the United States has chartered a privately-owned vessel.   874 F.2d at 1061.   Under the *Williams* test, the SAA applies to admiralty claims only when: (1) "the United States has consented to suit given the facts at hand" and (2) "the party attempting to invoke the exclusivity provision as a defense to suit has shown that a traditional

admiralty claim could have been stated against the United States." *Id.* (internal quotation marks omitted). The first part of the *Williams* test, also known as a "jurisdictional hook" inquiry, can generally be met simply by showing that the United States chartered the vessel at issue. *Padro v. Vessel Charters, Inc.*, 731 F. Supp. 145, 148 (S.D.N.Y. 1990). In the present case, the Court determines that the second prong of the *Williams* inquiry is not met, and accordingly, declines to consider the first *Williams* factor.

The second *Williams* requirement "is not as readily satisfied" as the first, especially when the government is a time charterer instead of a bareboat charterer. *Id.* A time charter is "an arrangement by which the charterer acquires the vessel's carrying capacity and makes business decisions about how it will be utilized, but under which the vessel's owner remains fully responsible for the operation of the ship." *Jones v. Navix Line, Ltd.*, 944 F. Supp. 468, 470 (E.D. Va. 1996). In contrast, under bareboat charters, also called demise charters, "full possession and control of the vessel are delivered up to the charterer for a period of time." *Reed v. S. S. Yaka*, 373 U.S. 410, 412 (1963). A bareboat charterer's "potential liabilities to third persons are much more extensive than those of" time charterers because a bareboat charterer "is considered the owner of the chartered vessel pro hac vice[.]" *Blanco v. United States*, 775 F.2d 53, 58 (2d Cir. 1985). It is a "common law admiralty principle" that "a time charterer is generally not liable to an injured seaman for the seaworthiness of the vessel or the negligence of its crew." *Hodnett v. United States*, Civ. No. JBF-03-183, 2003 WL 22764581, at *2 (E.D. Va. Aug. 11, 2003). A seaman can sue a time charterer only when "the seaman can show either the time charterer had enough control of the vessel to render it the owner *pro hac vice*, [ ] or the time charterer was actively negligent." *Alexander v. United States*, 63 F.3d 820, 822 (9th Cir. 1995) (citing *Williams*, 874 F.2d at 1062).

6

In the Complaint, Plaintiff does not allege any negligence on the part of the United States, so the Court will consider whether the United States was an owner *pro hac vice* of the *SLNC Goodwill*.

Courts are reluctant to determine that a time charterer has operational control over a vessel, which would render it an owner *pro hac vice*. In fact, "absent clear language transferring operational control to the charterer, courts will not infer such a transfer." *Hodnett*, 2003 WL 22764581, at \*3 (citing *Williams*, 874 F.2d at 1062). Because a time charterer "always directs the movements and cargo operations of the ship," having control over those functions does not render a time charterer an owner *pro hac vice*. *Alexander*, 63 F.3d at 822-23. Further, a time charter that holds a vessel's owner responsible for "equipping, manning, and supplying the vessel," as well as "maintaining the vessel's seaworthiness," is indicative of an owner's maintenance of operational control. *Hodnett*, 2003 WL 22764581, at \*3. More importantly, a charter that explicitly states that the vessel's owner "retains complete and exclusive possession and control of the Vessel" strongly evinces that a time charterer is not an owner *pro hac vice*. *Id.* (internal citation and quotation marks omitted).

Here, the agreement between Defendants and the United States is unambiguously a time charter. Not only does the Charter explicitly state, "Nothing herein contained shall be construed as creating a demise of the Vessel to the Charterer," (*see* Ex. A at IV-19), but both parties consistently refer to it as a time charter (*see, e.g.*, Mot. Dismiss Mem. Supp. at 7). Further, the United States did not act as an owner *pro hac vice* of the *SLNC Goodwill*, nor does Plaintiff allege that the United States was actively negligent. *Alexander*, 63 F.3d at 822.

Turning to the inquiry of whether the United States was an owner *pro hac vice* of the *SLNC Goodwill*, Defendants argue that the United States "possessed almost complete control over the crew that is unheard of for private time charterers." (Reply at 6 n.2, ECF No. 20.) While the

Charter does state that the United States has "direction with regard to the employment of the Vessel" (Ex. A at III-2), the Court need not explore the contours of this provision because there is ample evidence that Defendants retained operational control over the *SLNC Goodwill*. The Charter provides that "crew shall be appointed or hired by the Owner and shall be deemed to be the servants and agents of the Owner" (*id.*), and the Owner shall use due diligence to keep the vessel and its equipment "seaworthy, properly and efficiently manned and trained, equipped, supplied, and in every way suitable and adequately fitted for and in all respects ready for the service contemplated under this Charter Party" (*id.* at IV-9). Most importantly, the Charter explicitly states that "the Owner under this Charter [shall] retain[] complete and exclusive possession and control of the Vessel[.]" (*Id.* at IV-19); *see Hodnett*, 2003 WL 22764581, at *3.

Because the Charter's provisions provide Defendants with operational control over the *SLNC Goodwill*, and Plaintiff is not alleging the United States was actively negligent, the Court finds that prong two of the *Williams* inquiry is not met. Thus, the SAA's exclusivity provision does not apply to Plaintiff's claims, which accordingly may be brought against Defendants.

### B. Agency Theory

Defendants also argue that the SAA applies to this case because they were simply acting as "agents" of the government. (Mot. Dismiss Mem. Supp. at 6–10.) In support of this contention, Defendants cite a provision of the Charter stating that, under a Louisiana law, the United States "is the statutory employer of any of Contractor's employees and is entitled to [ ] tort immunity[.]" (Ex. A at IV-25.) Plaintiff argues that this Louisiana law does not apply to this suit for several reasons, including that the law covers injured employees who work outside of Louisiana *only* in instances when their "employment is principally 'localized' in Louisiana or [they are] working under a contract of hire made" in Louisiana. *Kennington v. H. Blume Johnson, Inc.*, 638 So.2d

8

1066, 1067 (La. 1994). Neither party alleges that Plaintiff performed any work in Louisiana, and apart from citing this statute, the Charter does not reference Louisiana. (*See* Opp'n Mot. Dismiss at 22.) Because neither of the conditions for the extraterritorial application of the Louisiana law is met, the Court need not consider Plaintiff's other arguments against applying this statute.

More broadly, Plaintiff correctly notes that Defendants' agency-related arguments are inapposite because in the line of cases invoking this agency theory, a private party has chartered a government vessel. *See, e.g., Kasprik v. United States*, 87 F.3d 462 (11th Cir. 1996); *Manuel v. United States*, 50 F.3d 1253 (4th Cir. 1995); *Shields v. United States*, 662 F. Supp. 187 (M.D. Fla. 1987). In contrast, *Williams*'s two-step inquiry is what governs in cases such as this one, when the government has chartered a private party's vessel. *See, e.g., Alexander*, 63 F.3d at 822; *Padro*, 731 F. Supp. at 148; *Abdulla v. Maersk Line Ltd.*, Civ. No. RSL-04-727, 2005 WL 3670918, at *3 (W.D. Wash. Mar. 10, 2005). Moreover, the agency theory is based on the SAA's exclusivity provision, which covers "agent[s] of the United States[.]" 46 U.S.C. § 30904. Because the SAA does not apply to this suit in the first place, the SAA-based agency theory is inapplicable as well. Notably, Defendants abandon their arguments about agency, and about the Louisiana labor law, in their reply. (*See* ECF No. 20.)

### C. Statute of Limitations

Defendants also argue that this suit is time-barred by the SAA's two-year statute of limitations, and that under the SAA, Plaintiff could not recover punitive damages and attorneys' fees. (Mot. Dismiss Mem. Supp. at 12–13.) Because the SAA does not apply here, neither of these arguments holds weight.

Further, Plaintiff's Complaint was filed within the three-year statute of limitations for civil actions for maritime torts, 46 U.S. Code § 30106, and suits brought under the Jones Act, 45 U.S.C.

§ 56.  (*See* Compl. ¶ 7); *see also Clauson v. Smith*, 823 F.2d 660, 661 (1st Cir. 1987) (explaining that 45 U.S.C. § 56 applies to Jones Act claims).  Moreover, punitive damages and attorneys' fees are hypothetically recoverable from private defendants.  *See Manuel*, 50 F.3d at 1260 ("Courts have long awarded punitive damages to seamen where maintenance and cure benefits have been arbitrarily and willfully denied."); *Nichols v. Barwik*, 792 F.2d 1520, 1524 (11th Cir. 1986) ("Attorney's fees are available to a plaintiff when the defendant refuses to provide maintenance and cure in bad faith, callously, or unreasonably.").

###   IV.    *Conclusion*

For the foregoing reasons, an order shall enter denying Defendants' Motion to Dismiss (ECF No. 15).

DATED this _15_ day of March, 2021.

BY THE COURT:

James K. Bredar
Chief Judge

10